No. 37,429

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHERO-KEE (*Plaintiff*), *Appellee*, v. H. AUSTIN, EMMA BURROWS et al., (Defendants), V. J. BOWERSOCK (Purchaser at Tax Sale), *Appellee*, COMMERCIAL FUEL COMPANY (Movant), *Appellant*.

(201 P. 2d 1071)

Opinion filed January 22, 1949.

*Simeon Webb,* of Pittsburg, argued the cause, and *Charles W. Hill,* of Pittsburg, was with him on the briefs for the appellant.

*V. J. Bowersock,* of Columbus, argued the cause, and *Paul Armstrong,* county attorney, and *John C. Miller,* deputy county attorney, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: On February 28, 1947, proceeding under what is now G. S. 1947 Supp., ch. 79, art. 28, the board of county commissioners of Cherokee county filed an action in the district court of that county to foreclose tax liens upon more than two hundred separate tracts of real property in that county, with a separate cause of action for each tract. We are concerned here only with tract No. 204, in which the surface had been taxed separately. This

cause of action was to foreclose the lien on the surface only of a described four-acre tract of land, upon which it is alleged the taxes had been unpaid for eight years, 1939 to 1946, inclusive of both. The taxes alleged to be due were set out separately for each year and the total was stated. The petition named Emma Burrows as the owner, or supposed owner, and named fourteen individuals and two corporations as parties claiming an interest in the property, all of whom were made defendants in the answer. Personal service of summons was had upon one of the defendants and publication service of summons was made upon all of the others. On May 28, 1947, the action was tried by the court and an appropriate decree entered in which the court approved the service of summons, found generally for plaintiff, and that the allegations of its petition were true. As to the tract in question the court found the amount of taxes due and unpaid and the amount of the costs which should be assessed against the tract. The court foreclosed plaintiff's lien for the taxes and costs, ordered the property to be sold by the sheriff to satisfy the lien, and made such other orders as were proper and which are normally made in such an action. An order of sale was duly issued, publication was properly made, and the sale held on July 8, 1947, at which sale the property in question was purchased by V. J. Bowersock for a sum in excess of the amount of the taxes and costs. On July 15, 1947, the court made an order confirming the sale and directing the sheriff to issue a deed to the purchaser. The sheriff issued a deed for the property in question to the purchaser, V. J. Bowersock, which deed was duly filed for record on August 5, 1947, in the office of the register of deeds.

On January 2, 1948, an attorney for the Commercial Fuel Company filed in that action an instrument which reads:

"MOTION TO SET ASIDE ORDER CONFIRMING SHERIFF'S SALE

"Comes now the Commercial Fuel Company, a Corporation, defendant herein, and moves the Court for an order setting aside the order confirming the sale in this proceeding in cause of action number 204 (describing the same) for the reason and upon the ground that the various requirements of the statute relating to tax foreclosure sales were not complied with in the following particulars:

"1. In the plaintiff's petition and all proceedings subsequent thereto, the property in question is erroneously described.

"2. The judgment herein does not recite the names of the defendants having or claiming interest in the particular tract involved.

"3. Service of summons upon which this judgment is based is defective.

"4. The execution and order of sale issued in this proceeding is inadequate and does not comply with the statutory requirements pertinent thereto.

"5. The notice of sale published herein is defective and of no legal force and effect."

Plaintiff filed a motion to strike from the files the Commercial Fuel Company's motion upon the ground that it was not a defendant in the action; that it was a mere intermeddler and had no legal right to question the court's order confirming the sale; that its motion was filed without leave of court having first been obtained; that it does not set out any claim of right, title or interest which it has in and to the property, and that its motion is so ambiguous that the meaning or intent thereof cannot be ascertained. A similar motion to strike was filed by the purchaser by leave of court.

All these motions came on for hearing on March 5, 1948, at which time the Commercial Fuel Company applied for leave to amend its motion by striking out the word "defendant" and inserting therein "and states that it is the owner and in possession of the hereinafter described real estate." This application was taken under advisement. The court also heard arguments of counsel upon the motions of the plaintiff and the purchaser to strike the motion of the fuel company and took that under advisement. On April 7, 1948, the court denied the Commercial Fuel Company's application to amend its motion and found that the motions of the plaintiff and of the purchaser at the sheriff's sale to strike the Commercial Fuel Company's motion, filed January 2, 1948, "should be sustained without hearing any evidence on the matter," and rendered judgment accordingly.

The fuel company appealed from the orders and judgments of the court of April 7, 1948.

We think there was no error in the rulings of the trial court. The Commercial Fuel Company in its motion described itself as a "defendant." This was inaccurate. It was not a defendant in the action, as the files before the court clearly disclosed. It had not asked to be made a party. It had filed no pleadings indicating it was entitled to be a party. It had not even requested and obtained leave of the court to file the motion which it filed on January 2, 1948. This motion was not even verified. It contained no statement the movant had an interest in the property, nor did it attempt to describe what that interest was, if it had one. It sought only to set aside the "order confirming the sale." It made no attack on the judgment of foreclosure. What benefit it would obtain by having the confirmation of the sale set aside is not even suggested. Commenting upon the grounds for relief as stated in the motion: (1) That the property was erroneously described—this appears to have been entirely aban-

doned. (2) That the judgment does not recite the names of defendants having or claiming an interest in the property. It did recite the names of fourteen persons and two corporations, so that ground as stated is ill-founded. Perhaps what the movant meant was that its name was not included. But if that was the meaning it certainly did not so state, nor was any reason stated as to why it should have been named. (3) That the service of summons was defective. No defect in the service was pointed out either in the motion or in the trial court, nor here. If the movant had any definite idea on that subject it has not communicated it to anyone. (4) That the order of sale is inaccurate and does not comply with the statutory requirement. In what respect this is true is not stated in the motion nor elsewhere in this record. (5) That the notice of sale is defective and of no legal force. In what way it is defective and without legal force is not stated in the motion nor elsewhere in this record.

While the journal entry of April 7, 1948, contains a finding that the motion should be ruled upon without evidence, we take that to mean no more than that the court regarded the questions before it as questions of law as distinct from questions of fact. There is nothing in the record to indicate that any evidence, aside from the court files, was tendered by the movant or any other party at that hearing. We are told by counsel for appellee that no evidence was offered.

Appellant contends that its motion filed on January 2, 1948, was under the authority of G. S. 1947 Supp. 79-2804b and was within the time provided by that section. It is true that it was within six months of the date of the sheriff's sale. Appellant complains that the court, on April 7, 1948, denied its application to amend its motion. We do note that this application was made more than six months after the sale and that it made a material change in the status of the movant. While courts are liberal in permitting amendments to pleadings they are not authorized under our statute (G. S. 1935, 60-759) to permit amendments which change substantially the claim or defense. More than that, the motion was addressed to the sound discretion of the court, and in view of the nature of the motion above discussed it cannot be said the court abused its discretion, or that its ruling was contrary to our statute.

On April 10, 1948, the Commercial Fuel Company filed a motion for rehearing in which it asked the court to vacate its decision of April 7 and to grant a new trial, for the following reasons: (1) Abuse of discretion of the court in making its decision without afford-

ing it an opportunity to present any testimony, even though it repeatedly requested that opportunity, and the same was refused. (2) Erroneous rulings in sustaining the motions to strike, "as The Commercial Fuel Company, the owner of said tract 204 in question had been in open and notorious possession for a period of approximately ten years prior to the judgment entered in this matter and was not made a party defendant herein"; that the court, therefore, had no jurisdiction over it when it entered the judgment excluding it from any interest in the real estate, and that the judgment and order confirming the sale is void as to it. This was the first instance in the record in which the appellant had made any statement as to what its interest was, if any, in the real property. (3) That the decision of the court was given under the influence of passion and prejudice. No evidence was given or argument made in support of this point. (4) That the decision was "contrary to the evidence which the Commercial Fuel Company offered to submit." As previously stated, there is nothing in the record to disclose that the appellant had offered to submit any evidence. This motion came before the court for hearing on May 19, 1948, at which time the appellant offered in evidence three affidavits, each of which had been verified on May 18, 1948.

Francis A. Monahan made affidavit that he had been an employee of the Commercial Fuel Company for twenty years; that from 1938 to 1946 he was in charge of the sales department at the Omaha office; that since July 1, 1946, he has been in charge and had supervision of the real estate owned by the company; that it had extensive real estate holdings in Cherokee county, and since 1937 has engaged in strip mining on the lands which it owns; that strip mining consists of removing the surface and uncovering the coal by a power-driven shovel, the coal vein being from twenty to fifty feet below the surface; that after such operation the land presents the appearance of mounds of loose soil, commonly known as "strip dumps"; that he has had access to the records of the real estate holdings of the company for the past two years and is familiar with Exhibits "A" and "B" attached to the affidavit. Exhibit "A" is a guardian's deed, which appears regular in form, dated December 3, 1937, and purports to convey to the Commercial Fuel Company an undivided one sixty-fourth interest in the tract of land here in question. Exhibit "B" is a general warranty deed, apparently

regular in form, dated September 30, 1937, purporting to convey to the Commercial Fuel Company the entire title to the tract of land here in question. Neither of these deeds had ever been recorded in the office of the register of deeds and there is no contention that the plaintiff, or any of its officers or attorneys, knew of their existence. The affidavit further stated that the Commercial Fuel Company has been the owner and in the actual possession of the land in question since December 3, 1937, and that it is now in the actual possession thereof; that about May 1, 1947, the Commercial Fuel Company moved its principal offices from Pittsburg, Kan., to Columbus, Ohio, and that it had no knowledge of the foreclosure proceeding commenced February 28, 1947, and that it had no information regarding this action until about November 15, 1947, when the affiant went to the office of the county treasurer to pay the taxes; that the Commercial Fuel Company never was served with notice of any type regarding the action; that at some time (not stated) the Commercial Fuel Company had some type of an agreement with plaintiff by which it used the roads in and about the land in question for mining and transporting coal, and that it tore up the roads and after removing the coal rebuilt the same and kept them in repair in all-weather condition.

Clifford Wilkinson made an affidavit that he is a farmer and had lived on the land across the road from the land in question for twenty-five years; that it has been common knowledge in the community that the Commercial Fuel Company has been the owner and in possession of the land since the fall of 1937; that shortly thereafter the company began coal stripping operations thereon, which were completed some eight years ago; that the land now presents the appearance of a series of mounds of dirt being thrown back from the pits and is known as a strip dump area; that many residents of the immediate vicinity were employed by the company while the stripping operations were in progress, and that it was generally known in the neighborhood that the land here involved was owned by the Commercial Fuel Company, which had done the stripping thereon; that in 1941 the U. S. Rural Electrification Administration contacted the Commercial Fuel Company, which gave its consent to an easement over the land for the erection of poles and wires to make electricity available to the rural homes in the vicinity; that at some time (not stated) the Commercial Fuel Company, under an agreement with the plaintiff, used the roads in

and about the land in question for mining and transporting coal, and that it tore up the roads and after removing the coal rebuilt the same and kept them in repair in all-weather condition.

His wife Atha made an affidavit to the same effect.

The court considered this motion and the affidavits and overruled the motion. Appellant complains of that ruling. We find no error in it. Since appellant had submitted its case on March 5 on questions of law, without offering evidence, it had no authority to file a motion for rehearing or a new trial at which it would present its evidence. Our statute (G. S. 1935, 60-3001) defines a new trial as follows:

"A new trial is a reëxamination in the same court of an issue of fact. . . ."

At best the motion was addressed to the sound discretion of the court. We think there was no abuse of the court's discretion. The Wilkinson affidavits were of no value as proving title, which is proved by title papers, usually recorded, and not by common understanding of people of the neighborhood. Since the deeds under which appellant claimed had not been recorded they were not notice to the taxing officials of the county. If the affiant Monahan went to the county treasurer's office in November, 1947, to pay the taxes on the land in controversy—a fact not clear from his affidavit—it is the first time anyone representing the appellant did so in a period of nine years. Whether the deeds were withheld from record to avoid the payment of taxes upon the land, or for other purposes, is not material here. If appellant was willing to let the title stand of record in the name of Emma Burrows it is not in position to complain of the consequences which naturally follow from its action. Appellant has shown no legal right to have the order confirming the sale set aside, nor did its motion show any equitable grounds for doing so, if such grounds may be said to exist. Without attempting further to analyze the somewhat mythical procedure and theories of appellant we think all of them may be answered by our previous decisions and the authorities cited therein. See *Wyandotte County v. Kerr*, 112 Kan. 463, 211 Pac. 128; *Sherman County Comm'rs v. Demaree*, 157 Kan. 478, 142 P. 2d 722, cited in annotation 174 A. L. R. 10, 164; *Sheridan County Comm'rs v. Acre*, 160 Kan. 278, 160 P. 2d 250; *Sumner County Comm'rs v. Avis*, 163 Kan. 388, 183 P. 2d 462.

We find no error in the record. The judgment of the court below is affirmed.